# DAVIS *v.* GARRETT.

PATENTS; INTERFERENCE; PRACTICE; DISCRETION OF COMMISSIONER OF PATENTS; INSPECTION OF AFFIDAVITS; APPEAL; INTERLOCUTORY ORDERS; REDUCTION TO PRACTICE; DILIGENCE.

1. A motion by one of the parties to an interference to strike the application of his opponent from the files for want of proper verification is properly refused where it appears that the date of the oath on file is February 18, that changes were alleged to have been made in the papers after that date, but at the direction of the applicant, that the applicant claims to have made oath as to inventorship after the making of the changes, that the application passed through the Patent Office, and that it has been acted upon for nearly ten years. A purely technical objection of this character should not be sustained, except upon the clearest proof.

2. The exercise of the discretion of the Commissioner of Patents should not be disturbed save where that discretion has palpably been abused.

3. A motion, by a party to interference proceedings, for leave to inspect certain affidavits filed in connection with his rival's application is properly refused, where it appears that such affidavits do not relate to the claims constituting the counts of the issue, but to other claims, and that the only theory on which such affidavits can have any relevancy is that there may be some statement therein inconsistent with statements made on the witness stand in the interference proceedings.

4. The propriety of an interlocutory decision in the Patent Office, relating to practice therein, held not to be necessarily involved in the consideration of an appeal from the final decision on the merits, and not the subject of review in this court. (Following *Westinghouse* v. *Duncan*, 2 App. D. C. 131; *Re Neill*, 11 App. D. C. 584, 588; *Re Frasch*, 20 App. D. C. 298, 301.)

5. An inventor of a complicated device, who attempts to construct a completed machine with his own hands during a period of over a year, and finally abandons the effort from lack of time and money, and immediately makes a model and drawings, is exercising due diligence.

6. The filing of an allowable application for a patent is equivalent to a

reduction to practice. (Following *Porter* v. *Louden,* 7 App. D. C. 64, 72.)

No. 353.  Patent Appeals.  Submitted May 10, 1906.  Decided June 5, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.            *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Melville Church* for the appellant.

*Mr. William E. Megrath* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. Sylvanus E. Davis appeals from the decision of the Commissioner of Patents awarding priority of invention to James C. Garrett of the following issue in interference between them: "The combination of a key board, counters, keys, and interlocking mechanisms, said keys being movable in directions at right angles to the face of the key board to operate the interlocking mechanisms and counters, an enclosing booth and a barrier having an entrance movement, which permits a voter to pass the barrier and gain access to the voting keys, and an exit movement, connections between the barrier and keys to push out and lock the latter in the exit movement of the barrier, and to hold said keys locked until unlocked by said entrance movement of said barrier."

Garrett alleged conception and disclosure in 1891, making of drawings and model in 1892, and actual reduction to practice in December, 1894. His application was filed June 8, 1895.

The treasurer of the United States Standard Voting Machine Company, assignee of Davis, made affidavit to the preliminary statement on behalf of Davis, on November 1, 1902, to the effect that Davis could not then be found, and alleging conception about October 1, 1894, disclosure, drawings, and model at the

same time, and reduction to practice by construction and operation of a full-sized machine about February 1, 1895. This was amended March 26, 1903, under oath of Davis, alleging conception before April 1, 1894, making sketches and model April 1, 1894, constructing a full-sized machine and reducing the invention to practice about November 1, 1894. Application was filed August 14, 1899.

All of the Patent Office tribunals concurred in finding that Garrett was the first to conceive; that Davis, later to conceive, was the first to reduce to practice; and that, when Davis entered the field, Garrett was exercising diligence in perfecting his invention, which resulted in constructive reduction to practice through his application filed June 8, 1895. In accordance with these conclusions, they concurred in awarding priority to Garrett.

2. Two incidental questions arising during the progress of the case in the Patent Office must first be considered.

(1) The first of these was raised by a petition filed by Davis on November 5, 1904, to strike Garrett's original application from the files because not properly signed and verified as required by Rules 30 and 31 regulating proceedings in the Patent Office. This petition was denied by the Commissioner on December 2, 1904. The point was again raised on the final hearing and the petition was again denied for the following reasons, which we quote from the Commissioner's decision:

"This matter was first presented by a petition to strike Garrett's application from the files under rule 31, and on December 2, 1904, I denied that petition. 81 MS. December, 213. The date of execution written in the oath on file is February 18, 1895, and it is said that changes were made in the papers after that date. There is no evidence even tending to show that the alleged changes were made without the knowledge and approval of Garrett, but, on the contrary, they are said to have been made at his direction. Garrett has testified in this and another interference that he executed the papers on April 18, 1895, after the alleged changes, and, while no written oath of that date now appears among the papers, there is no proof that he did not then make oath as to inventorship. It is to be noted that Garrett

has several times since the filing of his application made oath
that he is the inventor of the matter disclosed therein. He has
in the present interference made oath as to the subject-matter of
the interference.

"The objection to the legality of Garrett's application is pure-
ly technical, but, if sustained, would result in removing Garrett
from the field of claimants to this invention, since public use of
the invention has intervened to operate as a bar to the filing of a
new application. The result would therefore be irreparable
injury to Garrett. Such purely technical objection should not
be sustained, except upon the clearest proof. The evidence here
presented is not such as to satisfy me, and therefore the objection
to Garrett's application must be overruled."

In addition, the following facts and circumstances are dis-
closed by the record. The application of Garrett was executed
in San Francisco, and covered an entire voting machine, and
seems to have embraced more than 300 claims, including the one
of the present issue. This application was received without
question, and its progress through the office was attended with
the ordinary rejections of particular claims (the first of which
was on July 8, 1895) and amendments, some of which were
sworn to. It has been acted upon for years. As early as De-
cember 19, 1895, an interference was declared with one Cum-
mings on certain claims having no relation to the present issue.
The issue of this interference has nothing to do with the voting
machine proper, but a combination therewith of a voting booth
with mechanism so arranged that the entrance of a voter will
unlock the machine so that he may record his vote, and his exit
will lock it until the admission of another voter, whose exit will
likewise lock it again. The notice of the declaration of this
interference was given October 3, 1902, and on the same day a
notice was also given to Garrett on interference with one Ocum-
paugh. Davis having filed his first statement on November 1,
1902, the taking of testimony began August 17, 1903, and
closed about June 1, 1904. It was not until November 5, 1904,
that Davis's petition to strike out was filed.

After this great lapse of time, and with all of these facts and
circumstances before him, the Commissioner, who must neces-

sarily have knowledge of the established practice of the Patent Office, twice denied the prayer of this petition.

Assuming that the question is now properly before us, it is clearly one resting largely in his discretion, the exercise of which ought not to be disturbed save where that discretion has been palpably abused. We find no such condition here.

(2) The second question arose thus: It appears that certain affidavits had been filed in the course of Garrett's application, under Rule 75, for the purpose of antedating certain references cited against him as to claims not in this interference, and that these had been sealed on application October 3, 1902. On November 21, 1902, which was before Davis's amended preliminary statement had been filed, counsel on his behalf moved for leave to inspect all of the papers relating to Garrett's application. This was denied by the Examiner under his view of the purpose and operation of Rules 15, 105, 106, 108, and 110. This decision, on appeal to the Commissioner, was reversed March 2, 1903, in so far as the claims made by Garrett are concerned, but affirmed as to the affidavits aforesaid. As we understand from the proceedings, thereafter, Davis had access to the Garrett files to his entire satisfaction, with the exception of the aforesaid affidavits. His motion to be allowed to inspect them was renewed December 23, 1903. This was after Davis had closed his testimony in chief, but before Garrett had taken his. The Commissioner again denied the motion, saying: "As pointed out in the prior decision, the affidavits relate merely to the date when Garrett made the invention, and it is not necessary that Davis should see them in order that he may intelligently make the motions provided by the rules, or that he may prove his claim as prior inventor. The general practice of concealing such affidavits is believed to be a good one, and no reason is seen for departing from it in the present case. In fact, there is less reason for furnishing copies of the affidavits in this case then in most cases, since they do not relate to the claims constituting the counts of the issue, but to other claims made by Garrett."

The motion was again renewed on April 27, 1904, and again denied by Acting Commissioner Moore. It was also taken on appeal to the Secretary of the Interior, as the head of the De-

partment embracing the Patent Office, and by him also denied. On November 15, 1904, formal demand was made upon the Examiner of Interferences to produce said affidavits at the hearing, but with no result. The question having been brought before the Commissioner on the final hearing of the case, he adhered to his former rulings. His reasons appear in the following excerpt from his decision:

"It is to be noted that Garrett's application covers a complicated machine, and includes more than 300 claims. Only one of those claims is in issue here, and it is limited to a particular combination involving the operation of interlocking mechanism by the barrier. The affidavits were not filed in regard to this claim, but were filed to overcome the rejection of other claims which do not interfere with claims made by Davis. The declaration of the interference gave Davis no right to know when Garrett invented anything not involved in the interference, and therefore his petitions for copies of the affidavits were denied both before and after the taking of testimony.

"The only possible theory on which those affidavits could have any relevancy to the present proceeding is that there may be some statement therein inconsistent with statements made on the witness stand in the present proceeding. This office is not warranted in furnishing Davis with copies of the affidavits in the face of objection by Garrett upon such mere possibility. It is no more called upon to furnish those affidavits than it would be to furnish testimony given by Garrett in any other interference involving different issues, in which he might have been involved. The rule of secrecy applied to proceedings before this office is founded upon sound reason and is to be departed from only in case of necessity.

"It is not intended to rule that in no case would this office permit the inspection of affidavits such as those filed by Garrett, but it should permit that inspection only where the necessity for it clearly appears from the testimony," etc.

It is to be noted, in addition, that the several motions contained no statement of a fact tending to show any connection between said affidavits and the issue in this case, or that they really contained any matter relevant thereto. The recitals of

the several decisions were necessarily of facts obtained from the affidavits themselves, and there has been no contradiction of them.

The decision was an interlocutory one relating to the general practice of the Patent Office in all such cases, and the question of its propriety, as presented, is not necessarily involved in the consideration of the appeal from the final decision on the merits. For the reasons given in the following cases, it is not the subject of review. *Westinghouse* v. *Duncan,* 2 App. D. C. 131; *Re Neill,* 11 App. D. C. 584, 588; *Re Frasch,* 20 App. D. C. 298, 301, 192 U. S. 566, 48 L. ed. 564, 24 Sup. Ct. Rep. 424.

In his decision, the Acting Commissioner suggested one way in which, probably, the right to have inspection of the papers might have been raised in the taking of the testimony; and possibly there were others. Had some of these been resorted to the production of the papers might have been obtained, or the question might have been presented in such form as to compel its consideration as a necessary incident of the case.

Moreover, the grant or denial of such an application involves the exercise of a sound discretion on the part of the Commissioner of Patents that ought not to be disturbed unless clearly shown to have worked a material injury to the applicant. Nothing of the kind has been made to appear. The appellant concedes the reasonableness and validity of the general rules relating to secrecy that have been in force in the Patent Office for many years, but furnishes no satisfactory ground for making an exception thereto in this instance. All that he can urge in opposition to the facts stated by the Commissioner from the record in his custody is that there is a possibility, merely, of some recital in the same that might furnish some contradiction of the testimony of Garrett in this interference. That there is no such probability is apparent when it is recalled that Garrett's conception of the invention of the present issue, upon a date several months before Davis's, is shown by written evidence of which there is no doubt. It is true that Garrett claimed an earlier conception, but that which has been accorded is of an earlier date than that claimed by Davis in his preliminary statement, by which the latter is necessarily bound.

3. This brings us to the consideration of the question of priority.

As we have seen, the Patent Office tribunals concur in awarding Garrett a conception of the invention as early, at least, as January 3, 1894. There can be no doubt of the soundness of this conclusion, and, as it puts him several months ahead of Davis, it is unnecessary to inquire whether he is entitled to the claim of an earlier date.

In accordance with their unanimous conclusion, also, it may be assumed that Davis reduced the invention to practice by completing and testing a full-sized machine, embracing the issue, on or about April 6, 1895. As the evidence relating to an earlier reduction to practice, claimed in the amended statement of Davis, has been fully reviewed in the several decisions in the Patent Office, we think it sufficient to say that we entirely agree with them that it was not sufficient to establish the fact.

Under these conclusions, Garrett's right to the award of priority turned upon the question whether, at the time of Davis's entry in the field, he was exercising diligence in perfecting his invention. Each of the tribunals of the Patent Office concurred in finding that he was exercising such diligence at the time, and that he continued the same to the time of filing the application, which, having been allowed in due course, is now in interference with that of Davis filed more than four years later.

We agree in this conclusion, also. Garrett lived in San Francisco, his solicitor in the city of Washington, and there was much correspondence between them relating to the preparation of his application. It must be borne in mind that the application covered a complete voting machine, and contained more than 300 claims for patent. The invention of the issue related to the combination with a polling booth intended to operate as heretofore described. Pending the preparation of his application and the necessary drawings, Garrett's attorney requested him to prepare and send in a model. He concluded to build a complete machine of full size with twenty-four actuators, instead. This was commendable, although it would necessarily consume more time. The law looks with favor upon such attempts to perfect an invention. He was not financially able to

have the machine built, and undertook its construction himself, devoting much time thereto, taken from the business of manufacturing and selling candy in which he was engaged. We see no reason for denying credibility to the evidence tending to establish these facts. Passing by his own evidence, that of his wife is clear and convincing, and is corroborated by Mrs. Hutchinson, an intelligent witness called by the opposition. It is true that this witness, testifying years afterwards and without any memorandum to fix the date, said that this work was done in 1892 instead of 1894. But it seems quite clear that she was mistaken in her date, because she said that the work was stopped, as Garrett told her, by reason of his solicitor's renewed demand for the model. This demand for the model was unquestionably made in 1894, and not before. As she was certain in regard to this circumstance, it is evident that she was mistaken as to the year of the occurrence.

It is apparent to all persons at all familiar with voting machines that the construction of one not only involves a great deal of time, but also great expense. This is abundantly established by the history of Davis's efforts in the same line. Finding that his solicitor was impatient, and realizing the delay that must attend the construction of the machine, Garrett laid it aside and constructed the model which he later sent to his solicitor. While this model was not sufficient for the reduction to practice which he claims, it was ample for the purpose, in connection with his explanations, of preparing the necessary drawings and specifications for the application. It is also true that this work might have been carried on with greater expedition; but we cannot say that the delay in connection with it amounted to a want of diligence.

4. Error has also been assigned on the decision of the Commissioner, that Garrett's application filed June 8, 1895, was a constructive reduction to practice; and the contention has been presented with earnestness and force. The doctrine that the filing of allowable application for a patent is to be regarded as equivalent to reduction to practice,—that is to say, as what has been called "constructive reduction to practice,"—has long prevailed in the Patent Office. Early in the history of this court.

Office. *Porter* v. *Louden,* 7 App. D. C. 64, 72. Since then it the question was presented for our determination, and, for the reasons given in the opinion then delivered by Chief Justice Alvey, this court adopted the doctrine maintained in the Patent has been followed in very many cases, the citation of which is unnecessary. Without restating the grounds upon which the doctrine rests, we think it only necessary to say that we see no reason for a change of opinion. So far as this court is concerned, the question must be regarded as settled.

We find no error in the decision appealed from, and it will therefore be affirmed.

It is so ordered, and that this decision be certified to the Commissioner of Patents as required by law.  *Affirmed.*