## BELL v. HOFFMANN.
### Patent Appeal No. 3106.

Court of Customs and Patent Appeals.
April 17, 1933.

John Boyle, Jr., of Washington, D. C., for appellant.

I. R. Paris, of Washington, D. C., and A. P. Wollheim, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority of invention to appellee.

The issue is stated in eight counts, of which counts 1 and 8 are illustrative and read as follows:

"1. The process of preparing concrete mixtures for deferred use comprising the steps of mixing all ingredients at a central station to form concrete, transporting the mixture to a remote point and conditioning the mixture during transportation by subjecting the same to a combined slow, rolling and flowing motion while maintaining an unbroken surface on the entire exterior of the mixture for the expulsion of entrained air therefrom."

"8. Apparatus of the class described, comprising an automotive truck having a body frame, a rotatable and tiltable tank having a smooth walled and unencumbered interior, carried by said truck and having its rear end substantially overlie the rear end of the body frame, a tiltable frame disposed between said tank and said body frame, a pivotal connection between said tiltable frame and the rear end of said body frame, a pair of longitudinally aligned trunnion bearings carried and supported by said tiltable frame, said tank having trunnions supported by said bearings, and means for rotating said tank."

Of the counts in issue, 1 to 7, inclusive, are process counts, and count 8 is for apparatus. The interference involves two applications filed by appellee, on August 24, 1927, and March 19, 1928, respectively, and an application filed by appellant on July 29, 1929.

The invention involved is described in the decision of the Board of Appeals as follows:

"The process includes the step of conditioning concrete, the ingredients of which have already been mixed. Some of the process counts include the step of transporting the mixture to a point remote from the mixing or central station during the conditioning operation. The latter operation consists of subjecting the mixture to a slow, rolling and flowing motion while maintaining an unbroken surface on the entire exterior of the mixture for the expulsion of entrained air therefrom.

"For this purpose, the concrete is transported in a cylindrical tank which is supported for rotation about its longitudinal axis on the chassis of a motor truck. The tank is slowly rotated by a power take-off from the truck propelling means, or by a separate motor. The tank is mounted on a sub-frame which is pivotally connected to the rear end of the truck frame and the forward end of which is adapted to be elevated by a hoist carried by the truck, for the purpose of facilitating the discharge of the concrete through an opening in the rear end of the tank. This opening and a filling opening in the cylindrical surface of the tank are maintained closed by doors during transportation.

"The apparatus count 8 is rather specific and includes several of the features mentioned above. It further specifies that the tank has a smooth walled and unencumbered interior, and that its rear end substantially overlies the rear end of the body frame."

Both parties took testimony. The principal issue involved is that of originality of

invention; each of the parties claiming that he disclosed it to the other.

Both parties reside in Reading, Pa. Appellee was president and general manager of the Clinton Motors Corporation, which, prior to the making of the invention here involved, was engaged in said city primarily in the production and sale of motortrucks. Appellant was president of the Biehl Iron Works, Inc., which manufactured and sold to contractors equipment of various kinds, including concrete handling equipment, and was also engaged in the general fabrication of articles made from iron.

It is the contention of appellant that on July 10, 1927, he disclosed to appellee, and others present at the time of such disclosure, the invention here involved, while appellee contends that at said time he disclosed the invention to appellant and the others present.

It appears from the record that the Ready Mixed Concrete Corporation, doing business in the city of New York, early in 1927 required a number of motortruck chassis and bodies therefor, suitable for the hauling of premixed concrete. Following negotiations involving appellee, one Gillespie, representing said New York corporation, and others, the Clinton Motors Corporation was authorized, about May, 1927, to build a dump bucket body to be mounted on a Clinton truck. This dump bucket body appears to have been designed in part by appellee and in part by an employee of said New York corporation. Inasmuch as the Clinton Motors Corporation did not manufacture dump buckets, appellee called in appellant, whose company was engaged in that line of manufacture, and the bucket was built by said Biehl Iron Works. This bucket was tested early in July in New York, and was found unsatisfactory for the purpose intended. It was then altered at the plant of the Biehl Iron Works and, mounted on a Clinton truck chassis, was again tested on July 19, 1927, when it was again found unsatisfactory. It is conceded by both parties that the bucket so tested did not involve, either as to apparatus or process, the invention here involved.

At said test of July 19, 1927, it is conceded that there were present, in addition to the parties hereto, said Gillespie, one Rene Gouirand, an employee of said New York corporation, and one Klick, an employee of said Clinton Motors Company. It is further conceded that, following said test, a discussion was had among appellant, appellee, Gillespie, and Gouirand. Whether said Klick was also present during the said discussion,

or within hearing of it, is a matter of dispute in the testimony. At this discussion there was suggested the use of a rotating tank having a smooth inner surface, the capacity of the tank not to be fully utilized, for the transportation of mixed concrete. Appellant testified that in said discussion he suggested this character of apparatus, while appellee testified that he made the suggestion. Appellee's testimony upon this point is corroborated by said Klick, while appellant's testimony is corroborated by the testimony of said Gillespie. The testimony of Gouirand upon this point is rather indefinite and unsatisfactory, due to his poor command of the English language.

On either July 20 or 21 following this test, appellee placed previously mixed concrete in a cylindrical tank having a smooth interior and rotated the tank in a lathe. It was found that the concrete did not stratify during this test, which was conducted in a small gasoline tank; this demonstrated the success of the disclosure made during the discussion hereinbefore referred to. Appellee then proceeded with the manufacture of the first piece of commercial apparatus involving the invention here in issue, the tanks being built by said Biehl Iron Works under orders from appellee. Appellant and appellee continued their business relations for a period of about two years, during which time appellant's company constructed about 100 tanks upon the order of appellee. Their business relations were terminated when appellee learned that appellant had constructed a tank embodying the invention here in issue for a party other than the Clinton Motors Corporation.

Appellant testified that, after the first piece of commercial apparatus had been constructed and taken to New York, appellee made an agreement with him that he (appellee) would apply for a patent upon the invention for the protection of both; and would guarantee appellant orders for 100 tanks per year, upon condition that appellant would sell such tanks exclusively to the Clinton Company.

It appears from the evidence that appellant received from appellee orders for less than 50 tanks per year, but appellant made no claim of violation of contract; that on August 12, 1927, appellee entered into a contract with said Ready Mixed Concrete Corporation, signed by the witness Gillespie and others on behalf of the corporation, in which it was recited that "the said Edward A. Hoffman is the sole inventor of a revolving cyl-

indrical body mounted on a truck and which is to be used for the purpose of transporting mixed concrete," and in which contract appellee agreed to execute any and all patent applications necessary to fully protect said invention, and further agreed to assign a one-half interest therein to said corporation; that on August 24, 1927, appellee filed his first application for a patent upon the invention, the application having been prepared by the attorney for said Ready Mixed Concrete Corporation.

It is clear that before said contract of August 12, 1927, was entered into, Gillespie had a clear conception of the primary elements of the invention, viz. a revolving cylindrical body, mounted on a truck, without any agitating means within said body.

Gillespie testified that, immediately after the test of the first commercial device delivered to said Ready Mixed Concrete Corporation, early in August, 1927, the treasurer of said corporation, a Mr. St. John, insisted upon said Gillespie instituting negotiations for patent protection of the invention, in which said corporation should have an interest, as a result of which the witness personally accompanied appellee to a patent attorney for the purpose of preparing an application for patent upon the invention, and said contract of August 12, 1927, was entered into, whereby a one-half interest in the invention was to be assigned by appellee to said corporation, the corporation to have the exclusive sales agency of trucks embodying the invention, and upon its part the corporation agreed to pay to appellee's company, the Clinton Motors Corporation, 20 per centum profit upon all devices embodying the invention ordered by it.

The participation of Gillespie in said contract, and his taking appellee to a patent attorney, do not appear to be consistent with his testimony that appellant was the one who disclosed the invention to him on July 19, 1927.

Gillespie offers no explanation of this apparent inconsistency. While it is true that what constitutes invention is a conclusion from a state of facts, the recital in the contract that "Hoffmann is the sole inventor of a revolving cylindrical body mounted on a truck" is practically identical, so far as description of the apparatus is concerned, with Gillespie's testimony concerning the disclosure which he testified was made by appellant on July 19, viz. "that a cylindrical tank could be mounted in some way or other and kept in motion by some device or another," and

it would seem that, if appellant made this disclosure, Gillespie in securing protection for his company would not have regarded appellee as the inventor.

We gather from the record that at the time of taking his testimony Gillespie was no longer connected with the Ready Mixed Concrete Corporation, but was engaged in the manufacture and sale of concrete carriers under the name of the Parke Concrete Carrier Corporation, which he controlled either wholly or in part.

In view of the entire record, we are inclined to the view that Gillespie was either mistaken in his recollection respecting the disclosure of the invention by appellant on July 19, 1927, or that there should have been some explanation of his subsequent conduct, above related, in order to entitle his testimony concerning said disclosure by appellant to be given probative force.

In view of the foregoing, we do not think Gillespie's testimony can be given weight as corroborating appellant's testimony of disclosure. Appellant's conduct for a period of nearly two years subsequent to the commercial use of the invention is not consistent with the theory that the main features of the invention originated with him. The conception was a simple one, like many inventions of very great value, and it would seem that, if appellant conceived and disclosed the idea of a revolving cylindrical tank, without agitating means in the interior thereof, he would at once have realized that he was the inventor thereof, even though he was not familiar with the patent laws. He testified, however, that he did not believe he was the inventor until so informed by his attorneys upon his statement of facts to them, and even after he was so informed he took no steps to assert any rights to the invention until the business relations between appellant and appellee were terminated.

Appellant further assigns error upon the part of the Commissioner of Patents in denying the petition of appellant that the applications of appellee be stricken from the files because they were not signed with the true legal name of the party Hoffman.

Whether the Commissioner erred as alleged cannot be considered by us upon this appeal. Sundback v. Blair, 47 F.(2d) 378, 18 C. C. P. A. 1016.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.