Edwin J. VANDENBERG, Appellant,

v.

William B. REYNOLDS, Appellee.

Patent Appeal No. 6232.

United States Court of Customs
and Patent Appeals.

March 29, 1957.

Clinton F. Miller, Wilmington, Del.,
for appellant.

J. Arthur Young, Donald J. Quigg,
and L. Malcolm Oberlin, Bartlesville,
Okl., for appellee.

Before JOHNSON, Chief Judge, and
WORLEY, RICH, and JACKSON, re-
tired, Associate Judges.

RICH, Judge.

This is an appeal from the decision
of the Board of Patent Interferences of
the United States Patent Office, award-
ing priority of the subject matter involv-
ed in Interference No. 85,702 to the
senior party William B. Reynolds. The
single count of the interference is as fol-
lows:

> "The process which comprises
> polymerizing a mixture of buta-
> diene–1, 3 and styrene at a tempera-
> ture below 0°C, in aqueous emulsion
> in the presence of methanol, an
> emulsifying agent, an activating-re-
> ducing composition comprising a
> ferrous compound, and as the cata-
> lyst a phenylcyclohexyl hydroperox-
> ide in which the hydroperoxy group
> is attached to that carbon atom in
> the cyclohexyl ring which is at-
> tached to the phenyl ring".

The Reynolds application was filed on
June 27, 1949, and that of Vandenberg,
the junior party, on December 23, 1949.

The Board of Patent Interferences
found that Vandenberg's earliest proven
date of conception was June 9, 1949;
that he had established no actual reduc-
tion to practice; and that he had not

shown diligence in constructively reducing to practice. The board accorded Reynolds a conception date of February 25, 1949, but found that he too had failed to establish an actual reduction to practice. On those facts, Reynolds being both the first to conceive the invention in issue and the first to constructively reduce it to practice by filing his application, was accordingly awarded priority.[1]

It is contended by Vandenberg that the Reynolds application was improperly altered after it was executed, and should therefore have been stricken from the files of the Patent Office under Patent Office Rule 56. Vandenberg further contends that the question as to striking such application is ancillary to that of priority and urges that the question is before this court for determination. We shall consider these contentions first.

It is clear from the record that certain alterations were made in the specification of the Reynolds application after it had been executed. There is no dispute as to that fact, nor as to what the changes were, though the parties differ sharply as to whether or not they were of a substantial or material nature.

Following the taking of the testimony showing that the changes had been made, Vandenberg petitioned the Commissioner to strike the Reynolds application from the files in accordance with the provisions of Rule 56, 35 U.S.C.A.Appendix, which reads:

> 56. *"Improper applications.* Any application signed or sworn to in blank, or without actual inspection by the applicant, and *any application altered or partly filled in after being signed or sworn to,* and also any application fraudulently filed or

in connection with which any fraud is practiced or attempted on the Patent Office, *may be stricken from the files."* [Emphasis ours.]

Vandenberg's petition was dismissed by the Assistant Commissioner, acting for the Commissioner, in a decision stating that, since Reynolds *contended* that his testimony established an actual reduction to practice (as distinguished from the constructive reduction to practice resulting from filing his application) the question of striking his application from the files would not be passed upon during the interference but would be "considered *ex parte* upon the final determination of priority." On request for reconsideration, this decision was adhered to.

The interference thereupon proceeded to final hearing at which time the Board of Patent Interferences, although holding that Reynolds had not made good his claim of actual reduction to practice, declined to consider the question of striking his application from the files, which Vandenberg asked it to decide, on the ground that the Assistant Commissioner's decision that the matter would be considered *ex parte* precluded review by the board.

In support of his holding that the question of striking the Reynolds application was an *ex parte* matter, the Assistant Commissioner cited the following three decisions: Snider v. Bunnell, 1902 C.D. 460 (Com'r), Hopkins v. Scott, 1903 C.D. 261 (Com'r), and Davis v. Garrett, 28 App.D.C. 9, 1906 C.D. 724. In our opinion, none of those decisions supports the position taken by the Assistant Commissioner. In Snider v. Bunnell, the application sought to be stricken was that of the junior party, and the Commissioner said:

---

1. The Board of Patent Interferences concluded its opinion with the following statement:

In summation, Vandenberg is accorded a conception date of June 9, 1949, and since he did not adequately show successful reduction to practice of the invention of the count, absent a showing of diligence, he is restricted to his filing

date of December 23, 1949, for reduction to practice. Reynolds is accorded a conception date of February 25, 1949, and since he too failed to adequately establish successful reduction to practice, he is *prima facie* entitled to his filing date of June 27, 1949, for reduction to practice. Reynolds being the first to conceive and the first to file, is entitled to prevail here.

"Snider is the junior party to the interference, and *since no decision on priority in his favor can be based upon his filing date*, but only upon evidence of prior invention by him, the question whether his application was altered is an *ex parte* one, which can affect only his rights. He may be the prior inventor and entitled to receive a patent upon a formal application, even if his present application is informal. In other words, the objection *does not go to the merits* of the interference or of Snider's claim." (Emphasis ours.)

It was also held that the Commissioner had exclusive jurisdiction of the question of striking the application.

In Hopkins v. Scott also it was the junior party's application which was alleged to have been altered and the Commissioner, in deciding the case, used language identical with the first sentence quoted above. He also reaffirmed the exclusive jurisdiction of the Commissioner to decide the question of striking applications.

In Davis v. Garrett, on the other hand, where the allegedly informal application was that of the senior party, the Commissioner did not hold the question as to whether it should be stricken from the files to be an *ex parte* matter, but twice considered it on its merits *inter partes* before determining priority, denying it both times. The Court of Appeals of the District of Columbia (which then heard appeals from the Commissioner in interferences) found no abuse of discretion in this denial.

It thus appears that the decisions cited by the Assistant Commissioner, so far as they are pertinent to a situation such as the present one, where the senior party's application is alleged to have been improperly altered after execution, indicate that that matter is not necessarily *ex parte*, but rather that it should be considered *inter partes* prior to any award of priority.

In Lindstrom v. Ames, 37 App.D.C. 365, 1911 C.D. 384, as in the present case, the party whose application was allegedly altered after execution had not proved an actual reduction to practice before his opponent's filing date. Ames, who was first to conceive but second to file, assailed Lindstrom's application as a constructive reduction to practice because of substantial additions after execution. Lindstrom argued that that was a purely *ex parte* matter, citing Snider v. Bunnell, supra. In holding that the question of striking the application from the files should be considered *inter partes*, the court said:

"But in that case no attempt was made to rely upon the informal application as a reduction to practice. It may well be that an inventor could perfect his right to a patent in such a manner as not to lose it by the filing of a defective application. But that is not this case. Actual reduction to practice may be dispensed with only by the filing of a complete, *allowable* application. *The application here before us is not properly allowable.* No valid patent could be issued thereon. Hence, appellant has failed to reduce his invention to practice prior to appellee's filing date." (Emphasis ours.)

Counsel for Reynolds points out, correctly that at the time when Lindstrom v. Ames was decided, the pertinent Patent Office rule provided that "Every application * * * altered or partially filled up after being signed or sworn to, will be stricken from the files" whereas present Rule 56 has the permissive language "may be stricken." That fact may have some bearing on the propriety of a decision on the merits as to whether a particular application should be stricken (though the Commissioners seem to have exercised discretion even under the old rule) but it is not, in our opinion, material to the question as to whether such a decision should be made *inter partes* before priority is awarded or *ex parte* afterwards.

It does not appear that the specific question here under consideration has ever been passed upon by this court, but in Bain v. Hasselstrom, 165 F.2d 436, 35

C.C.P.A., Patents, 811, this court, after most careful consideration, held that whether or not an application had become abandoned was a question ancillary to priority, citing Dalton v. Wilson, 44 App.D.C. 249, 1916 C.D. 142. It seems evident that whether an application is void *ab initio* because of alteration after execution has as much bearing on the issue of priority as does the question whether an application which was originally valid has become abandoned. In either case the basis for a constructive reduction to practice is involved.

■■ We hold that the question of whether Reynolds' application, at least in the present posture of this interference, should be stricken from the files under Patent Office Rule 56 is a question ancillary to priority. Whether or not Reynolds has an application on which a valid patent could issue is a question the answer to which could determine the outcome of the interference, as was the question of abandonment of an application by one of the parties in Bain v. Hasselstrom, supra.

Reynolds contends that this court cannot properly consider the alteration of his application, and cites Sundback v. Blair, 47 F.2d 378, 18 C.C.P.A., Patents, 1016, and Bell v. Hoffman, 64 F.2d 134, 20 C.C.P.A., Patents, 978. The former case involved an appeal from a decision by the Board of Appeals affirming the dissolution of an interference by the law examiner on the ground that the interference counts were unpatentable over certain prior patents. That issue clearly had no bearing on priority of invention and was not ancillary thereto, and accordingly Sundback v. Blair is not a precedent here.

Bell v. Hoffman involved the issue of originality of invention. The court found that the senior party Hoffman had not derived the invention from the junior party Bell, and that Hoffman had made an actual reduction to practice. At the conclusion of its opinion the court said the following, which is all it said on the question of reviewing the Commission-er's refusal to strike Hoffman's applications:

"Appellant further assigns error upon the part of the Commissioner of Patents in denying the petition of appellant that the applications of appellee be stricken from the files because they were not signed with the true legal name of the party Hoffman.

"Whether the Commissioner erred as alleged cannot be considered by us upon this appeal. Sundback v. Blair, 18 C.C.P.A., Patents, 1016, 47 F.2d 378."

There are at least two distinctions between Bell v. Hoffman and the present case. In the first place the court found not only that Hoffman had made an actual reduction to practice but that Bell did not invent the interfering subject matter at all, having derived it from Hoffman. On the record, therefore, Hoffman was entitled to the award of priority irrespective of his application, whereas here, Reynolds has been held to be the prior inventor on the basis of the filing date of his application as a constructive reduction to practice.

In the second place, the Commissioner refused, *on the merits*, to strike the Hoffman applications, whereas here the Assistant Commissioner declined to consider the question of striking the Reynolds application, on the merits, until the interference is terminated. Furthermore, it does not appear from the opinion that the Board of Appeals had before it the Commissioner's refusal to strike the applications.

For the reasons above stated, we are of the opinion that neither Sundback v. Blair nor Bell v. Hoffman is a precedent in the present case.

Holding the view that we cannot consider the alteration of his application, Reynolds has moved to strike those portions of the record on appeal and of Vandenberg's reasons of appeal and briefs which relate to the alteration issue, on the ground that those matters relate to an irrelevant issue. Since we are of the

opinion, for the reasons above stated, that the question as to whether or not the Reynolds application should be stricken from the files is material here, as a question ancillary to priority, those motions are denied.

As above indicated, the decision of the Board of Patent Interferences awarding priority to Reynolds is predicated on the assumption that his application constitutes, under well settled law, a constructive reduction to practice and hence the decision on priority rests on the allowability of that application. Vandenberg, throughout this interference, has been attacking, in effect, the constructive reduction to practice on the basis of which Reynolds has prevailed. That is the issue underlying the petition to the Commissioner to strike the application. The decision of that question must be made in the first instance by the Commissioner, Snider v. Bunnell, Hopkins v. Scott and Davis v. Garrett, all supra, but he decided to postpone it for *ex parte* consideration. Under those circumstances the Board of Patent Interferences was, of course, correct in refusing to consider the question and in the circumstances we, as an appellate tribunal, cannot now consider it. We cannot review something which has not been decided.

We are of the opinion that the issue Vandenberg has raised with respect to the striking of Reynolds' application is one which should be considered *inter partes*, Lindstrom v. Ames, supra. We disagree with Reynolds' contention that "Since the striking of an application from the files is punitive in nature, if such penalty is exacted, it should be to the benefit of the public through an *ex parte* proceeding, rather than to the ben-

efit of Vandenberg in this present *inter partes* proceeding." We fail to see that where there is admittedly a patentable invention, the public would benefit from the possibility that no patent issues on it.

In the interest of orderly procedure and the conservation of judicial man hours, both here and in the Patent Office, it seems to us that any issue which may be determinative of the continuance or outcome of an interference should be decided by the tribunal having jurisdiction thereof when it is first properly raised and not postponed until after the consideration of the usually complex factual issues involved in the merits of priority disputes. In this case the issue which was left undecided and deferred by the Assistant Commissioner has been elaborately briefed and argued, along with the strictly priority questions, both here and before the board, all to no avail for want of an initial decision.

Since we feel that no award of priority should have been made until the proper Patent Office tribunal or tribunals had decided whether the Reynolds application should be stricken from the files (a question on which, of course, we express no opinion), we are *reversing* the decision of the Board of Patent Interferences and *remanding* the case to the Patent Office for further proceedings consistent with this opinion.

Reversed and remanded.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.

JACKSON, Judge, Retired, recalled to participate herein in place of COLE, Judge, absent because of illness.