35 C.C.P.A. (Patents)

## THOMPSON v. DUNN et al.*
### Patent Appeal No. 5354.

Court of Customs and Patent Appeals.
Jan. 6, 1948.

---

* This cause was originally decided by this court on January 6, 1948. Thereafter counsel for appellee filed a petition for rehearing. The rehearing was granted March 12, 1948, solely for the purpose of permitting the court to revise certain language in its original decision.

Paul D. Flehr and John F. Swain, both of San Francisco, Cal., Philip A. Minnis, of San Jose, Cal., and Russel N. Low, of Washington, D. C., for appellant.

Lyon & Lyon, of Los Angeles, Cal. (Lewis E. Lyon, of Los Angeles, Cal., and Charles M. Thomas, of Washington, D. C., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined by the counts in issue, Nos. 1 and 2, to appellee Guy A. Dunn.

At the time of the decision of the Board of Interference Examiners the interference involved the application of appellant, No. 267,835, filed April 14, 1939, the joint application of appellees Dunn and Borchers, No. 264,802, filed March 29, 1939, and the sole application of appellee Dunn, No. 382,-650, filed March 10, 1941.

It appears from the record that the application of appellant was assigned to the Food Machinery Corporation of San Jose, California, and that the application of each of the appellees was assigned to the California Packing Corporation of San Francisco, California, so that the applications of Guy A. Dunn and Dunn and Borchers are owned by a common assignee.

Although the application of Dunn and Borchers was filed prior to the applications of both appellant Thompson and appellee Dunn, no appeal was filed in this court by the joint applicants. Accordingly, the issue as presented here is solely between appellant Thompson and appellee Dunn. See Wheeler v. Kleinschmidt, 149 F.2d 161, 32 C.C.P.A.(Patents) 975.

Appellee Dunn is the junior party and the burden was upon him to establish priority of the invention defined by the counts in issue by a preponderance of the evidence.

The invention defined by the counts in issue relates to a fruit handling machine comprising two rotating turrets, one of which carries impaling members which are adapted to receive the fruit and hold it while it is processed as, for example by peeling. The other turret carries holders, each of which is adapted to receive a fruit and carry it into a position in which it is aligned with an impaling member. The movement of the holders is controlled in such manner that each remains in alignment with an impaling member for a definite period of time, while the turrets continue to rotate, and during that time the impaling member impales the fruit, the holder releases it, and the impaling member withdraws it from the holder.

Count 2 of the interference is sufficiently illustrative of the subject matter in issue. It reads:

"A fruit handling machine comprising cooperating rotatable members, a reciprocable fruit impaling device carried by one of said members, an expansible fruit holder carried by the other of said members, means for continuously rotating said rotatable members in timed relation, means cooperating with the fruit holder for moving the same into and out of axial alignment with the impaling device and for maintaining the fruit holder in axial alignment with the impaling device for a finite distance, means for reciprocating said impaling device during such alignment to impale and remove fruit from said holder, means for holding the fruit holder closed during the impaling movement of said impaling device whereby the fruit is supported in said fruit holder until impaled, and means for opening the fruit holder to release the fruit as the impaling device is retracted."

The Board of Interference Examiners held, on the evidence presented, that Thompson conceived the invention on August 26, 1937, and that he reduced the invention to practice in August 1938. It also held that appellee Dunn had established that he conceived the invention in December 1936 and that he reduced the invention to practice in November 1938.

The real issue in the case involves the question of diligence; that is, whether appellee Dunn was diligent during the critical period from the time appellant entered the field—August 26, 1937—until he reduced the invention to practice in November 1938. If appellee was diligent during that period, he is entitled, as held by the Board of Interference Examiners, to an award of priority of invention. On the contrary, if he was not exercising reasonable diligence in reducing the invention to practice during the critical period, appellant Thompson is entitled to an award of priority of invention.

It is not contended here by counsel for appellee that appellant did not conceive the invention in issue as early as August 1937. Accordingly, it is unnecessary for reasons hereinafter stated, to determine whether appellant is entitled to an earlier date for conception of the invention.

The board's decision, holding that appellant reduced the invention in issue to practice in August 1938, is based upon a machine conforming to the counts in issue which was built under the supervision of appellant and the witness Leonard McGihon, who was employed as a designing engineer by appellant's assignee, from September 16, 1937, until April 1939. In the machine referred to, the peeling and feeding turrets rotated about a common axis; however, the board properly held that the counts in issue do not require that the turrets be mounted on different axes.

It further appears from the record that the testimony of appellant, the witness McGihon, and the witness Richard D. Fox who was employed by appellant's assignee as an assistant chief engineer of a division of appellant's assignee company, clearly established that appellant's machine was completed and sufficiently tested as early as August 1938. Each of those witnesses stated that he observed the results of the tests and that they were better than those obtained by the use of the standard commercial machine in use at that time.

It is true that the testimony introduced by appellant indicates that about 20 per centum of the pears processed by appellant's new machine required some hand trimming before canning. However, perfect results are not to be expected in view of the irregular shapes and sizes of the fruit used. Furthermore, a test report offered by appellee Dunn—Exhibit III—shows percentages of pears satisfactorily peeled, ranging from ninety-five per centum down to sixty per centum. It appears from that exhibit that "Various types of pears had a great bearing on the percent of Pears satisfactorily peeled as is indicated in the variation shown." Accordingly, the fact that twenty per centum of the pears treated by the 1938 Thompson machine required hand trimming does not establish that the machine was not satisfactory.

Counsel for appellee Dunn argue that as the Thompson machine, hereinbefore referred to, was not produced commercially, and that as appellant's application was not based upon that machine, but rather on one in which the turrets rotated upon separate axes, the machine reduced to practice in August 1938 was not a success.

The circumstances hereinbefore related might have some weight if the issue here involved were otherwise doubtful, however, the argument presented by counsel for appellee is not sufficient to justify disregarding the uniform testimony of the witnesses that the Thompson machine was satisfactory. See Hedenskoog v. Backus, 48 F.2d 408, 18 C.C.P.A. (Patents) 1065, and Schmitz, Jr., v. Silver, 103 F.2d 390, 26 C.C.P.A. (Patents) 1164. We are of opinion, therefore, that the board properly held that Thompson successfully reduced the invention in issue to practice in August 1938.

The board further held that appellee Dunn first successfully reduced the invention to practice in November 1938, approximately three months subsequent to the reduction to practice of the invention by appellant. We have carefully considered the evidence of record and are of opinion that the evidence submitted by appellee is not sufficient to support a holding that he reduced the invention to practice prior to November 1938. Furthermore, it does

not appear to be seriously contended by counsel for appellee that he is entitled to an earlier date for reduction to practice. Accordingly, it was properly held by the board that although appellee was the first to conceive the invention, he was the last to reduce it to practice. As hereinbefore noted, it was incumbent on appellee to establish that he was diligent in reducing the invention to practice from a time just prior to appellant's entry into the field—August 1937—until appellee reduced the invention to practice in November 1938.

It clearly appears from the record that appellee Dunn devoted his attention and work during the critical period, to the development of a satisfactory pear *peeling means* (not to be confused with the *peeling turret* upon which the peeling means is mounted) which is not included either in his disclosure or in the counts in issue, although it appears that when he completed and tested his peeling means in November 1938, which included the invention here involved, he had a satisfactory machine. However, it does not appear until that time that he had reduced to practice the invention here involved which comprises the two rotating turrets called for by the counts in issue. Furthermore, it is impossible to determine from the evidence submitted by appellee that his activities were diligently directed to the reduction to practice of the involved invention until subsequent to appellant's reduction to practice. It is clear from the record that appellee was attempting to develop a *pear peeling mechanism* which, it was thought, would operate more satisfactorily from a commercial standpoint in conjunction with his conception of the invention here involved.

The witness Roy G. Lucks, manager of the Northwest division of the California Packing Corporation and who was associated with appellee, testified that " * * * prior to this time [November 8, 1937] I had repeatedly told Dunn I thought he should concentrate on the development of the *peeling turret* in order to overcome the difficulties that we were having in *peeling the pears* and that I was satisfied with the ideas that he had for the construction of the feed unit were sound and were opera-

ble. I felt, nevertheless, that he should first construct the peeling turret." (Italics ours.) That statement, together with the other evidence of record, clearly indicates an intention on the part of appellee to delay the building and testing of the involved invention until he had constructed a satisfactory peeling turret. It should be understood in the consideration of this case that although the involved counts call for *feeding* and *impaling* devices, they do not call for a *peeling means*. Accordingly, the assumption that appellee's application discloses a complete pear treating device necessarily implies the existence in the prior art of peeling means which could be mounted on the main turret in appellee's application and used in connection with the feeding means. In other words, the feeding and impaling means disclosed in appellee's application and set forth in the counts in issue are of such a nature that it does not require any specific peeling means to make them operative. The development of such a peeling means, therefore, could not be a prerequisite to the reduction to practice of the invention here in issue.

██ It is evident from the board's decision that it was of opinion that work done on any part of the completed machine, although not on the elements defined by the involved counts, constituted diligence by appellee in reducing to practice the invention here involved. We are not of that opinion. It is apparent from the record that appellee and his associates contemplated modifications in their peeling mechanism and proceeded to perfect such a mechanism before appellee attempted to reduce to practice the feeding and impaling mechanism called for by the counts in issue. In so doing, appellee, of course, is not open to criticism. It is well settled, however, that diligence will not wait upon commercial expediency. See Bastian v. Champ, 34 App.D.C. 225, 1910 C.D. 321; Peterson v. Thomas, 56 App.D.C. 113, 10 F.2d 908; Beidler v. Caps, 36 F.2d 122, 17 C.C.P.A. (Patents) 703; Hurd v. Smith, 97 F.2d 147, 25 C.C.P.A. (Patents) 1137; and Preston et al. v. White, 97 F.2d 160, 25 C.C.P.A. (Patents) 1219.

■ It has frequently been held that diligence has been exercised where work on one invention was necessary to successfully develop a second invention (1) where it was necessary to raise money for reducing the second invention to practice and (2) where the situation was such that the second invention was so related to the first invention that it was necessary to develop the first before the second could be properly tested.

For example, where it is necessary to raise money in order to reduce the second invention to practice, see Christensen v. Ellis, 17 App.D.C. 498, 1901 C.D. 326; Wayne v. Tew, 53 App.D.C. 336, 290 F. 311, 1923 C.D. 247; and Joy v. Morgan, 54 App.D.C. 110, 295 F. 931, 1924 C.D. 208.

Where the inventions are so related that it is necessary to develop the first invention before the second could be properly tested, see Chapman v. Candee and Taylor, 1872 C.D. 190. However, in neither of the two illustrations hereinbefore referred to is it proper in an interference case to delay the reduction to practice of the invention defined by the counts in issue and devote time and energy to the development of an auxiliary device which is not essential to the testing of the invention in issue.

In the case of Lotterhand v. Hanson, 23 App.D.C. 372, 1904 C.D. 646, it was held that where an inventor who had conceived an attachment for a typewriter and delayed the testing of it until he had attempted to develop a new typewriter, such development did not amount to diligence in reducing the attachment to practice. See also, Stapleton v. Kinney, 18 App.D.C. 394, 1901 C.D. 414; Hawkins v. Ward, 38 App.D.C. 90, 1912 C.D. 50; Clement v. Roberts, 51 App.D.C. 29, 273 F. 757, 1921 C.D. 243; Russell v. Sisson, 55 App.D.C. 401, 4 F.2d 1014, 1925 C.D. 274; Brogden v. McDill et al., 57 App.D.C. 116, 18 F.2d 158; Fageol v. Midboe, 56 F.2d 867, 19 C.C.P.A. (Patents) 1117; and Smith v. Nevin, 73 F.2d 940, 22 C.C.P.A. (Patents) 748.

It is unnecessary that we here enter into a detailed discussion of all of the decisions applicable to the proposition of law hereinbefore stated.

■ There is nothing of record in the instant case to indicate that appellee was financially unable to properly test and reduce to practice the invention defined by the counts in issue, or on the other hand, to file an application for a patent for such invention. Certainly it did not require the testing of a peeling device in order to determine whether the elements defined by the counts in issue, that is, the feeding mechanism and the impaling mechanism and the drive means therefor, were adequate for their intended purposes. We are of opinion, therefore, that appellee was not diligent in reducing to practice the feeding mechanism and the impaling mechanism defined by the counts in issue.

It is contended here by counsel for appellee, as we understand it, that appellee is entitled to the filing date of the Dunn and Borchers joint application and that that application warrants a holding that appellee is entitled to be considered as the senior party, as the joint application was filed prior to the filing date of appellant. In support of that statement it is argued by counsel for appellee that it has been conclusively established that the invention in issue was made solely by appellee and that the filing of the joint application for the invention was a mistake. We are of opinion that it is unnecessary to rule on that question. Appellant's date of conception and reduction to practice are satisfactorily established, whether he be considered as the junior or senior party, and even if appellee were considered as the senior party, rather than the junior party, the conclusions reached as to appellee's dates of conception and reduction to practice, and his lack of diligence, would not be affected.

■ Counsel for appellee argue that as appellant considered the machine built by his associate McGihon to embody the best form of his invention and that, since appellant did not disclose that machine in his application, he has not complied with Sec. 4888, R.S., U.S.C., title 35, sec. 33, 35 U.S. C.A. § 33, which requires that an inventor shall disclose "the best mode in which he has contemplated applying" the principle of his invention. That argument does not

relate to priority of invention, but merely to appellant's right to obtain a patent. Accordingly, it cannot properly be considered by this court in an interference proceeding. See Gowen v. Hendry, 37 F.2d 426, 17 C.C.P.A. (Patents) 789, and Broadmeyer v. Lindbladh, 47 F.2d 381, 18 C.C.P.A. (Patents) 1004.

Counsel for appellant contend that for various reasons, not necessarily here involved, relating to the filing and prosecution of the Dunn and Borchers joint application, appellee Dunn is barred from receiving an award of priority. Since we are of opinion that appellant is entitled to an award of priority on the evidence of record, it is unnecessary that we consider that contention.

For the reasons stated, the decision of the Board of Interference Examiners is reversed.

Reversed.

BLAND, Associate Judge, sat during the argument of this case, but resigned before the opinion was prepared.