Aaron Leonard SHEFFNER, Appellant,

v.

Duane G. GALLO and Aaron Leonard Sheffner, Appellees.

Patent Appeal No. 75–512.

United States Court of Customs and Patent Appeals.

May 15, 1975.

Arthur R. Crawford, Cushman, Darby & Cushman, Washington, D. C., attorneys of record, for appellant; Alvin Guttag and William T. Bullinger, Washington, D. C., of counsel.

John J. Cavanaugh, Chicago, Ill, attorney of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

Sheffner, the senior party, appeals from that portion of the decision of the Board of Patent Interferences which awarded priority of the sole count in issue to none of the parties involved.[1] In the words of the board, priority was awarded "against" each party. Gallo and Sheffner (Gallo et al.), the junior party, did not appeal to this court from the decision of the board. We reverse.

### The Subject Matter

The sole count, which is self-explanatory, reads:

A process for treating acne comprising: (1) applying to the acne affected skin of a person suffering therefrom, an acne alleviating amount of a topical composition containing 0.1 to 10% by weight of thioglycolic acid or a pharmaceutically acceptable salt thereof, and (2) keeping said composition in contact with the affected skin.

### The Record[2]

Sheffner took no testimony, but relied on his April 4, 1969 filing date. Gallo et

---

1. The involved Sheffner application is serial No. 813,750, filed April 4, 1969. Gallo et al. are involved through application serial No. 867,981, filed April 18, 1969, under the provisions of Rule 47, 37 CFR 1.47.

2. Only those portions of the record necessary for an understanding of the board decision as it relates to Sheffner and our disposition of the Sheffner appeal are summarized below.

al. took testimony and introduced evidence to prove prior actual reduction to practice. The testimony includes that of one of the alleged co-inventors, Gallo, and Carnahan, who was, at the time his deposition was taken, the Director of Patents at Mead Johnson & Company, the assignee of Gallo's interest in the Gallo et al. application. Gallo had worked with Sheffner, who was Gallo's immediate supervisor at Mead Johnson from 1958 until Sheffner's resignation from Mead Johnson in 1968.

In February of 1969, Carnahan prepared a draft of a patent application pertaining to processes for treating acne through the topical application of various compounds. The draft contained no disclosure of a specific compound on which the present count would read. A copy of the draft was sent to Sheffner on February 28, 1969.

On March 6, 1969, Carnahan prepared a memorandum concerning a telephone conversation he had with Sheffner that day relating to the draft mailed to Sheffner. The memorandum reads:

Dr. Sheffner telephoned to comment on the draft patent application which was mailed to him February 28, 1969. He was quite agreeable to the content and form and in fact had no comments to offer in the way of corrections. I indicated to him that we felt it advisable to broaden the scope of the application to include thioglycolic acid and related compounds since we have always thought of this as being an equivalent of acetylcysteine for uses of this type in view of our experience with the hair-waving use. He indicated that he preferred that I would not include that in the present application since he had left no records at Mead Johnson with respect to the use of thioglycolic acid in acne and that it was something he thought he might work on himself in his present position. I agreed not to include it in this patent application in view of his remark but indicated that we considered thioglycolic acid in this use as Mead Johnson's property and that if he pursued his plans, including the filing of a patent application, that it would lead to difficulty. We did not pursue the point any further, but he did ask if John Lanahan would be in a position to file a patent application for him from Mead Johnson's standpoint. I assured him that Mr. Lanahan had no further connection with the company, and that if he wished to contact him to file a patent application, that was his business. We left the matter that I would make some editorial corrections to the present draft application and return it to him for execution sometime next week. He was agreeable to this.

Subsequently, the draft sent to Sheffner was revised by Carnahan to include the subject matter of the present count. This final revised application, which corresponds exactly to the involved Gallo et al. application, was signed by Gallo and on March 25, 1969, was sent to Sheffner for his signature. On April 8, 1969, four days after filing his involved application, Sheffner wrote a letter to Carnahan stating that he was returning the final revised application unsigned and that he was doing so on the advice of counsel.

### The Board Decision

After noting that Gallo et al. had the burden of establishing priority by a preponderance of the evidence, the board held that Gallo et al. had failed to prove conception of the subject matter of the count prior to Sheffner's filing date and were thus not entitled to an award of priority. For the sake of completeness, the board further held that the record failed to show any actual reduction to practice by Gallo et al.

With regard to not awarding priority to Sheffner, the board stated:

Our opinion supra, however, does not dispose of the case. Under the unusual circumstances involved, we cannot award priority to Sheffner, based on the record before us. For reasons given above, we have held

that Sheffner is not a joint inventor with Gallo; however, *neither is Sheffner an original and independent inventor* [emphasis ours] which he must be in order to prevail. The draft patent application corresponding to the involved Gallo et al. application disclosing the invention of the count was prepared at Mead Johnson prior to the Sheffner filing date. At this juncture, we note that on March 6, 1969, Sheffner was apprised . . . of the plans at Mead Johnson relative to the concept of TGA [thioglycolic acid] for the treatment of acne. Further, the draft patent application was forwarded to Sheffner on March 25, 1969 and Sheffner admits retaining a copy of said patent application for at least some period after April 8, 1969. *In the interim, the involved Sheffner application was precipitously filed on April 4, 1969.* [Emphasis theirs.] From the time Sheffner left Mead Johnson on September 22, 1968 until April 4, 1969, we find not a shred of evidence demonstrating any activity on the part of Sheffner with regard to the specific subject matter of the count in issue. With this record before us, we cannot reward Sheffner merely for the reason that he filed his application post haste after seeing the application of his opponent in this interference and thereby became senior party herein.

*Opinion*

 Upon analyzing the decision below, we can only come to the conclusion that the board, in awarding priority "against" Sheffner, violated one of the most basic principles of interference law —"an interference is limited to a determination of priority and questions 'ancillary' thereto." Mortsell v. Laurila, 301 F.2d 947, 49 CCPA 1028 (1962). See Rule 258, 37 CFR 1.258. The board clearly based its decision relating to Sheffner *only* [3] upon its determination that someone other than Sheffner was the "original and independent inventor" of the subject matter of the count, i. e., third party inventorship, and such a determination is *not* "ancillary" to priority. Mortsell v. Laurila, supra. Basing its decision upon such a determination is reversible error. Furthermore, evidence or lack of evidence as to the issue of third party inventorship is not pertinent to the issue of priority between the parties in a two-party interference, Mortsell v. Laurila, supra.

 After having held that the junior party, Gallo et al., failed to prove either conception, or actual reduction to practice, the only adverse action the board could have taken with respect to the senior party, Sheffner, would have been to make a recommendation to the Commissioner of Patents and Trademarks under Rule 259, 37 CFR 1.259.[4] This procedure the board declined to initiate.

---

3. Its decision could not have been based upon a finding that Sheffner derived the subject matter of the count from Gallo et al. in view of its holding that Gallo et al. had failed to prove conception of the subject matter of the count. Aside from the fact that the junior party, Gallo et al., had the burden of proving that Sheffner derived the invention in issue from them. DeGroff v. Roth, 412 F.2d 1401, 56 CCPA 1331 (1969), "[t]here can be no derivation without prior conception on the part of the party alleging derivation." Egnot v. Looker, 387 F.2d 680, 55 CCPA 782 (1967).

4. Rule 259, 37 CFR 1.259 reads:

*Recommendation by Board of Patent Interferences.* The Board of Patent Interferences may, either before or concurrently with their decision on the question of priority, but independently of such decision, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent to either of the parties for the claim or claims in interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed if such matters have not been considered before by the examiner, or take other appropriate action. If the case is not so remanded, the primary examiner will, after judgment on priority, consider such matters, unless the same shall have been previously disposed of by the Commissioner.

For the foregoing reasons, the decision of the Board of Patent Interferences refusing to award priority of invention to Sheffner is reversed.

Reversed.

MILLER, Judge (concurring).

I agree that the board violated the basic rule that third party (i. e., stranger to the proceeding) inventorship is not ancillary to priority and must, therefore, be reversed.

This court, in Goodrich v. Harmsen, 442 F.2d 377, 58 CCPA 1144 (1971), decided that the third party in a three-way interference suit is not a "stranger" for purposes of the rule, "third party inventorship is not ancillary to priority." In that case the court allowed Goodrich to argue the issue of derivation by Lokey (also a party to the interference) from Harmsen, stating:

> It is unquestionably true that either party to a two-party interference has standing to assert that the other *derived* the invention in issue from it, 1 Revise & Caesar, *Interference Law and Practice* § 113 (1940), and we see no reason in law or logic why any party to an interference involving three or more parties should not be able to show that a second party derived the invention from a third *party*, if proof of that fact would advance the prover's case. Certainly that result will lead to an overall saving of administrative and judicial effort, and it does not seem to be inconsistent with the narrow scope of present interference practice.

Because of this statement, it has been suggested that the court "may to some extent have weakened the foundation" of the basic rule that third party inventorship is not ancillary to priority and that there is "compelling logic" in favor of proof of derivation from strangers to an interference. Pat.L.Persp. § C.2[4] (1971 Dev.).

One reason for *not* allowing proof of derivation from a stranger to an interference is the complexity it might impose on interference proceedings. This was described in Foster v. Antisdel, 14 App.D.C. 552, 1899 CD 413 (1899):

> Indeed, if the practice obtained of allowing the claims and pretensions of any and all persons, though not parties to the proceeding, to be set up as means of defeating the priority of claim of one of the parties to the proceeding, it would be very difficult, if not almost impossible, in many cases, to try the issue of interference as between the immediate parties to it. Such practice would open the door to all sorts of collusions, and perjury would be the recourse of many who failed to support their claims by legitimate evidence.

The long-standing refusal of courts to consider derivation from a stranger to the interference is another reason. Moreover, it is arguable that, when Congress enacted 35 U.S.C. § 102(g), it adopted the rule promulgated by prior court decisions that proof of derivation from a stranger to an interference is not ancillary to priority.[1]

A further reason for not permitting proof of derivation from a stranger to an interference is that an interference proceeding is provided only for the purpose of determining priority between the parties. Cooper v. Hubbell, 53 F.2d 1072, 1078, 19 CCPA 790, 801 (1931); see Holister v. Maynard, 129 F.2d 877, 29 CCPA 1249 (1942). Even though one who derived the invention from a stranger to the interference might be "awarded" priority, the Patent and Trademark Office (PTO) can reject pertinent claims of his

---

1. With respect to 35 U.S.C. § 102(g), the Congressional committee reports state:

This paragraph retains the present rules of law governing the determination of priority of invention.

S.Rep.No.1979, 82d Cong., 2d Sess. 18 (1952), U.S.Code Cong. & Admin.News, pp. 2394, 2410; H.R.Rep.No.1923, 82d Cong., 2d Sess. 18 (1952). See also P. J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. p. 19, where the author states that 35 U.S.C. § 102(g) "retains the rules of law governing the determination of priority of invention *developed by decisions.*" (Emphasis supplied.)

application[2] in subsequent ex parte prosecution on the ground that he "did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). Under Rule 259, 37 CFR 1.259, the Board of Patent Interferences may, before or concurrently with its decision on priority, direct the attention of the Commissioner to facts which bar the grant of a patent to any of the parties in the interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of such information. Therefore, Rule 259 provides a means for accomplishing the result attempted by the board in this case, without violating the rule that third party inventorship is not ancillary to priority.

There appears to be only one circumstance which, in the absence of Congressional action, warrants what might be considered an exception to the rule. This is where there is an issue of fraud which involves third party derivation. It is contrary to public policy to award priority to the guilty party, and this court has said that the question of fraud is ancillary to priority. Langer v. Kaufman, 465 F.2d 915, 921, 59 CCPA 1261, 1267 (1972).

2. Of course, where the deriver is a patentee, he would not be subjected to further PTO ex parte prosecution in the absence of a subsequent reissue application. However, his patent would be vulnerable in an infringement or declaratory judgment action.