Andrew John TOFE, Appellant,

v.

Harry S. WINCHELL, Appellee.

**Appeal No. 80–553.**

United States Court of Customs and Patent Appeals.

March 31, 1981.

Steven J. Goldstein, Jack D. Schaeffer, Cincinnati, Ohio, for appellant.

William H. Epstein, Nutley, N. J., George W. Johnston, Baltimore, Md., for appellee; Jon S. Saxe, Bernard S. Leon, George M. Gould, Nutley, N. J., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER, and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Patent Interferences (board) awarding priority of invention to Winchell [1] over Tofe.[2] On the ground that the matter was not one "ancillary to priority," the board refused to consider whether the Winchell application contained a disclosure of Winchell's best mode of practicing his invention as required by 35 U.S.C. § 112.[3] We vacate the award of priority to Winchell and remand.

## Background

The applications of both parties were filed on April 30, 1975.[4] Tofe relied upon stipulated testimony as evidence of conception of the invention on April 23, 1975, the execution date of the application, with the filing date serving as the date of constructive reduction to practice. Winchell submitted testimony and documentary evidence from which the board found prior conception and actual reduction to practice as early as October 23, 1974. This finding is not attacked by Tofe directly.

Tofe asserts it became clear upon completion of the Winchell rebuttal testimony that Winchell failed to disclose the best mode

1. Application Serial No. 573,297 filed April 30, 1975, for "Stable Diagnostic Reagents." The real party in interest is Medi-Physics, Inc., a subsidiary of Hoffman-La Roche, Inc.

2. Application Serial No. 573,220 filed April 30, 1975, for "Stable Radiographic Scanning Agents." The real party in interest is The Procter & Gamble Company.

3. The first paragraph of 35 U.S.C. § 112 reads:
 The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

4. The subject matter of the interference is a bone-scanning reagent which has been stabilized by the addition of ascorbic acid. The sole count of the interference, which corresponds to claim 40 of the Tofe application and claim 13 of the Winchell application, reads:

contemplated by him for carrying out his invention as required by the first paragraph of 35 U.S.C. § 112.[5] Tofe contends that because of Winchell's failure to comply with 35 U.S.C. § 112, Winchell's application is incomplete under 35 U.S.C. § 111[6] and should be denied a filing date and the status of an application, and that since 35 U.S.C. § 135[7] requires "an application" which would interfere with another pending application, Winchell has no standing as an interference party. Tofe concludes, therefore, the award of priority should be in his favor.

Tofe appeals from the decision on priority and from the denial of two motions, both predicated on Winchell's alleged failure to meet the requirements of 35 U.S.C. § 112.

In a belated motion under 37 CFR 1.231(a), invoking 37 CFR 1.258, Tofe asked the board to deny the Winchell application a filing date on the ground that to merit consideration as a bona fide application under 35 U.S.C. § 111, the specification must satisfy the statutory requirements of 35 U.S.C. § 112.

In the other motion, filed under 37 CFR 1.243, Tofe asked that:

> A stable composition useful in the production of technetium-99m based scanning agents comprising a stannous reducing agent, ethane-1-hydroxy-1, 1-diphosphonic acid, and an effective amount of ascorbic acid sufficient to stabilize the composition.

5. Tofe asserts that Winchell knew and failed to disclose that a combination with sodium salt was the best mode of formulating the scan reagent. Winchell asserts that the use of salt was a well-known and obvious expedient prior to his filing date.

6. § 111. Application for patent
 Such application shall include: (1) a specification as prescribed by section 112 of this title; (2) a drawing as prescribed by section 113 of this title; and (3) an oath by the applicant as prescribed by section 115 of this title . . . .

7. § 135. Interferences
 (a) Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application . . . he shall give notice thereof to the applicants . . . .

[T]he Board of Patent Interferences direct the attention of the Commissioner to the failure of the application of the party Winchell to satisfy the best mode requirement of 35 USC 112, paragraph one, and to recommend under 35 CFR 1.259 that the application of the party Winchell be denied its filing date for failure to comply with the statutory requirements of 35 USC 112 and 35 USC 111.

Winchell urged that the issue of no interference in fact could not be predicated on failure to disclose the best mode and that the issue of best mode was not ancillary to priority in this case. Decisions on the motions were deferred by the interference examiner for consideration at final hearing.

### The Board

The board first considered the motion under 37 CFR 1.231(a) which asked the board itself to deny Winchell standing in the interference. In denying this motion, the board stated:

We know of no precedent where the Board of Interferences has denied a filing date of an application in an interference proceeding for any reason and then held that there was no interference in fact, and Tofe has offered no precedent for such action. Moreover, we agree with Winchell that 37 CFR 1.231(a)(1) precludes consideration of a motion based on the ground that there is no interference in fact unless the count differs from the corresponding claim of one of the involved applications. [Footnote omitted.] The count in this interference does not differ from the corresponding claims of the parties' applications.

The Tofe motion also seeks a determination of whether the Winchell application involved in this interference complies with the "best mode" requirement of 35 USC 112. However, this Board views the decision in *Thompson v. Dunn*, 35 CCPA 957, 166 F.2d 443, 77 USPQ 49 (1948) as prevailing authority for the position that the issue of "best mode" in an application involved in an interference is not ancillary to priority, and therefore this Board is without jurisdiction to consider the is-

sue. We recognize that the *Thompson* decision was based on R.S. 4888 which preceded Title 35. However, from a comparison of the two statutes, we find no reason to conclude that a different result should now follow. Tofe argues that under *Weil v. Fritz*, 572 F.2d 856, 196 USPQ 600 (CCPA 1978) the best mode issue is ancillary to priority, and the board has the authority to decide the best mode issue. In our view, however, the decision in *Weil v. Fritz*, supra, was limited to situations involving a benefit application where the issue of best mode in a benefit application may be coupled with a motion to shift the burden of proof.

Turning to the alternative motion, under 37 CFR 1.243, the board declined to make a recommendation to the Commissioner under 37 CFR 1.259 that the filing date be denied, stating:

With respect to Tofe's alternative motion requesting that the Board of Interferences recommend to the Commissioner of Patents and Trademarks pursuant to 37 CFR 1.259 that Winchell be denied the filing date of its application for failure to comply with the best mode requirement of 35 USC 112, we note that the making of recommendations under 37 CFR 1.259 is a matter "wholly within the discretion" of the Board. Rivise and Caesar, *Interference Law and Practice*, Volume IV, Section 813, page 2839 (Michie Co. 1948). We decline to make the recommendation requested. Cf. *Brader v. Schaeffer*, 193 USPQ 627 (Bd.Pat.Int.1976). [Footnote omitted.]

The board gave no further consideration to the "best mode" question and on the basis of Winchell's evidence of prior conception and reduction to practice awarded priority of invention to Winchell.

### OPINION

We hold that the issue of whether an inventor has failed to disclose in his application for a patent the best mode contemplated by him for practicing his invention as required by 35 U.S.C. § 112, first paragraph, presents an issue which is ancillary

to priority and is within the jurisdiction of the board and this court to determine.

The parties here have argued the case on the basis that either Winchell or Tofe must eventually emerge from this proceeding with an award of priority.[8] Winchell asks that we affirm the validity of *Thompson v. Dunn*, 35 CCPA 957, 166 F.2d 443, 77 USPQ 49 (1948), in which it was stated that the requirement of disclosure of best mode is not a matter related to priority. Tofe asks that we specifically overrule *Thompson v. Dunn*, supra, on the ground that the decision was made under an earlier statute in which the best mode requirement served a different purpose from the requirement of the current statute.[9] Tofe further argues that *Weil v. Fritz*, 572 F.2d 856, 196 USPQ 600 (CCPA 1978), is a controlling precedent, a case which will be considered in turn.

With respect to the holding in *Thompson v. Dunn*, supra, the issue actually being addressed by the court was whether Thompson was entitled to an award of priority if Dunn had failed to disclose his best mode. The thrust of this court's decision was that that issue was not *determinative* of priority. The specific holding continues

to be correct.[10] In so holding, however, the court stated that the issue of best mode fulfillment was not one which "relates to priority of invention" and could not be considered in an interference.

Subsequently, this court has recognized that the jurisdiction of the board necessarily includes certain preliminary questions which, while not determinative of priority, are logically related to that determination so that a decision on the specific preliminary question may *moot* the issue of priority, *Nitz v. Ehrenreich*, 537 F.2d 539, 190 USPQ 413 (CCPA 1976). In *Nitz* this court stated:

> The existence of common subject matter defined by the interference count is a prerequisite for an award of priority, i. e., the existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests. Determination of the presence or absence of interfering subject matter is "logically related" to the jurisdiction-conferring issue of priority because that determination necessarily precedes a priority award. [537 F.2d at 543.]

8. However, at oral argument counsel for both parties asked that this court provide guidance on the effect of an issue being raised as to whether a party has satisfied the best mode requirement without regard to technicalities of pleading below or how the issues specifically were raised on appeal, which otherwise might stand in the way of reaching the merits.

9. We do not consider this argument to have merit. The statutory change is explained by P. J. Federico in his *Commentary on the New Patent Act*, 35 U.S.C.A. p. 1 at 25:

> The clause in the old statute relating to machine patents and requiring the best mode in such cases has been omitted as unnecessary and a clause has been added requiring that the specification "shall set forth the best mode contemplated by the inventor for carrying out his invention." Although not the same, this requirement is partly derived from and replaces the first defense specified in old R.S. 4920 (see under section 282) as well as being a revision and extension of the old clause which related only to machines. This requirement, it should be noted, is not absolute, since it only requires disclosure of the best mode contemplated by the inventor, presumably at the time of filing the application.

10. A second inventor *de facto* may be adjudged the first inventor *de jure* only in accordance with the statutory requirements of 35 U.S.C. § 102(g), which provides:

> A person shall be entitled to a patent unless—
>
> \* \* \* \* \* \*
>
> (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

Failure to meet the best mode requirement is not *ipso facto* concealment of the invention.

For a comparison of § 102(a) and § 102(g) see Oisher & Steinhauser, *The Role of the Prior Inventor Under Section 102(g)*, 45 J.Pat.Off. Soc'y 595 (1963). See also *Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), in which the Court states: "The fundamental rule we repeat is that the patentee must be the first inventor."

The validity of the holding in *Nitz v. Ehrenreich*, supra, is supported by the principle that any party to a justiciable controversy may raise the point that there is an absence of jurisdictional facts at any time. *Cf. In re Haas*, 486 F.2d 1053, 179 USPQ 623 (CCPA 1973); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (CA 5 1980); *Arrowsmith v. United Press International*, 320 F.2d 219 (CA 2 1963) (jurisdictional question should be considered before reaching the merits); *Boone v. Kurtz*, 617 F.2d 435 (CA 5 1980).

 We find the logic compelling that 35 U.S.C. § 135, which provides jurisdiction to the board to settle the matter of priority of invention between two applicants for patents on the same invention, contemplates that two valid applications exist. It is, of course, correct that the determination that there should be an interference is initially a matter of discretion residing solely in the Commissioner of Patents and Trademarks, his decision being based on the ex parte record showing two applications ready for allowance except for a determination of priority. However, the failure of an applicant to disclose his best mode is a jurisdictional fact more likely to be brought out by an adverse party in an inter partes proceeding than by the examiner during ex parte prosecution. When the issue of whether the best mode requirement has been satisfied by a party is raised in an interference, we hold that the issue must be resolved before the issue of priority is addressed. We interpret 37 CFR 1.258 [11] as a sufficiently broad delegation of authority to the board to make its own conclusion on whether an application satisfies the best

mode requirement of 35 U.S.C. § 112, based on its judgment of facts not fully appreciated until after the interference was declared. Where a matter has been adjudged to be of such significance that no meaningful determination of priority can be made until the issue is resolved, we have previously required that appropriate procedures be followed below to secure its resolution prior to appeal. For example, in *Peska v. Satomura*, 602 F.2d 969, 202 USPQ 726 (CCPA 1979), this court, speaking through Judge Miller, ordered on rehearing:

> We adhere to our decision vacating the board's award of priority to Satomura and remanding the case for further proceedings consistent with the original opinion which, however, is hereby modified as follows: our holding that the board erred in refusing to set the case down for *final* hearing on the issue of whether Peska et al. are entitled to the benefit of their earlier filed Czech application, is revoked. This, we believe, will permit the PTO in further proceedings to follow such internal procedure as it considers proper, consistent with preserving Peska's rights of due process. [602 F.2d at 974.]

See also *Vandenberg v. Reynolds*, 44 CCPA 873, 242 F.2d 761, 113 USPQ 275 (1957).

 In resolving the issue of best mode fulfillment, it is immaterial to this court whether the board refers the matter back to the primary examiner or makes the initial determination itself. The board would, in any event, not be bound by the primary examiner's conclusion that the interference should proceed if in the judgment of the

---

11. 37 CFR 1.258(a), reads as follows:

In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the nonpatentability of the claim to the opponent will necessarily result in the conclusion that the party raising the question is in fact the prior inventor on the evidence before the Office, or relates to matters which have been determined to be ancil-

lary to priority and must be considered. A party shall not be entitled to raise such nonpatentability unless he has duly presented a motion for dissolution under § 1.231 upon such ground or shows good reason (e. g., that such nonpatentability became evident as a result of evidence extrinsic to an involved application) why such a motion was not presented; however, to prevent manifest injustice the Board of Patent Interferences may in its discretion consider a matter of this character even though it was not raised by motion under § 1.231.

board it must be dissolved. *Nitz v. Ehren-reich,* supra. What is important is that the issue be resolved in the course of the *inter partes proceeding* when the matter has first been properly raised. *Vandenberg v. Reynolds,* 44 CCPA at 879, 242 F.2d at 765, 113 USPQ at 278; see also Judge Lane's dissent in *Techler v. Norstrud,* 475 F.2d 1192, 1196, 177 UPQ 390, 393 (CCPA 1973).

■ From the foregoing discussion it is apparent that denominating a matter ancillary to priority does not determine what disposition will be made of the interference. We do not agree with Tofe's position that the holding in *Weil v. Fritz,* supra, mandates an award of priority to Tofe if the Winchell application is defective. In *Weil v. Fritz,* there was no question that the parties both had complete applications and that a valid interference proceeding had been set up over which the board had jurisdiction. In *Weil v. Fritz,* the issue of best mode fulfillment related to the burden of proof, not to the standing of a party. Fritz sought to prove a priority date in the interference by reliance on an earlier application and, under 35 U.S.C. § 120[12], had to have an earlier application in full compliance with 35 U.S.C. § 112. There was no challenge to the adequacies of the applications which were the subject of the interference. An award of priority to one of the parties in that case was, thus, appropriate whether or not the earlier application was acceptable to establish a priority date.

■ In any event, it would create an anomaly to make the question of best mode satisfaction one to be determined by the board where the application is one of a series, which would be the case if Winchell were to refile, but not ancillary where the application stands alone. However, the resulting disposition need not be the same.

A consideration which may have influenced the encompassing of more and more issues within the "ancillary to priority" rubric [13] is the concern that a contrary holding would preclude an interference party from obtaining an appealable decision on the issue. That concern would obviously be remedied if the board followed a routine practice of referring motions under 37 CFR 1.231(a), absent frivolity or unjustifiable belatedness, to the primary examiner. This court has on a number of occasions expressed its unwillingness to sustain an award of priority of an apparently unpatentable invention. *Cf. Loshbough v. Allen,* 54 CCPA 1113, 373 F.2d 747, 152 USPQ 812 (1967).

■ As a final matter, we endorse the procedure by the board indicated by the report of the proceedings in *Steierman v. Connelly,* 192 USPQ 433 (Bd.Pat.Intf.1975), *modified,* 192 USPQ 446 (Bd.Pat.Intf.1976), in which the board made a decision on the ancillary issue of fraud and a decision on the issue of date priority *but for* the issue of fraud.[14] By following this practice, the board will enable this court to address all facets of the issue of priority, should this matter be appealed.

## CONCLUSION

■ Accordingly, we *vacate* the board's award of priority to Winchell and *remand* the case for further proceedings consistent with our opinion herein.

### VACATED AND REMANDED

12. § 120 Benefit of earlier filing date in the United States

 An application for patent for an invention *disclosed in the manner provided by the first paragraph of section 112* of this title in an application previously filed in the United States, . . . by the same inventor, shall have the same effect, as to such invention, as though filed on the date of the prior application . . . . [Emphasis added.]

13. *Vandenberg v. Reynolds,* supra, (whether an application was altered after execution); *Stalego v. Heymes,* 46 CCPA 772, 263 F.2d 334, 120 USPQ 473 (1959) (right to make a count); *Norton v. Curtiss,* 57 CCPA 1384, 433 F.2d 779, 167 USPQ 532 (1970) (fraud).

14. No fraudulent conduct by Winchell which might bring this case within the holding of *Norton v. Curtiss,* supra, is asserted here.

MARKEY, Chief Judge, concurring in result.

I concur in the view that the best mode issue must be held ancillary to priority. I do so solely on the basis of a perceived need for consistency in the law.

Over the years, this court has continually expanded the list of issues it has considered ancillary to priority, for example, (1) whether an application was altered after its execution, *Vandenberg v. Reynolds,* 44 CCPA 873, 877, 242 F.2d 761, 764, 113 USPQ 275, 277 (1957); (2) right to make a count, *Stalego v. Heymes,* 46 CCPA 772, 774, 263 F.2d 334, 335, 120 USPQ 473, 475 (1959); (3) fraud, *Norton v. Curtiss,* 57 CCPA 1384, 1389, 433 F.2d 779, 783, 167 USPQ 532, 536 (1970); (4) interference in fact, *Nitz v. Ehrenreich,* 537 F.2d 539, 543, 190 USPQ 413, 416 (CCPA, 1976); (5) best mode when claiming benefit under 35 U.S.C. § 120, *Weil v. Fritz,* 572 F.2d 856, 866, 196 USPQ 600, 608 (CCPA, 1978); (6) patentable distinctness, *Hester v. Allgeier,* 646 F.2d 513, —— USPQ —— (CCPA, 1981).

The considerations here set forth do not appear to have been argued to the court in its "ancillary to priority" cases.

Hindsight is always easy, but in retrospect it does appear that the court could as well have held none of the listed issues ancillary to priority. It could have interpreted the statute, 35 U.S.C. § 135, as meaning only what it says, that is, that "The question of priority of invention," and only that question, "shall be determined by a board of patent interferences." That

holding would have kept interference practice simple, by maintaining a clear line of distinction between a naked determination of who was first to invent [1] and a determination of who, if anyone, was entitled to a patent.

In a very real sense, the court's "ancillary to priority" holdings have been directed to "who shall decide." Issues such as support for a count, interference in fact, and patentable distinctness, could have been viewed as required preliminary decisions, that is, as ancillary not to priority but to the very existence of an interference. The decision on such issues could have been left to, or referred by the board back to, the examiner. Issues touching defects in an application, such as whether an application was belatedly altered, fraud in the application, and whether an applicant disclosed the best mode known to him at the time of filing, could have been viewed as governing the right to a patent and referred by the board to the Commissioner, or left for later decision by the examiner, who "will" consider such questions "after judgment on priority." Rule 259.[2]

Whether an application is defective is critical, not just ancillary, to the right to a patent. It may also be viewed as involved in the requirement that there be at least two applications (or an application and a patent) available for interference, that is, as going to the jurisdiction of the board. Thus defects in an application may be ancillary to an interference. Only a very broad definition of the term "ancillary," however, can support the view that defects in an applica-

1. Or conceive and exert due diligence unto a reduction to practice.

2. § 1.259 Recommendation by Board of Patent Interferences.

The Board of Patent Interferences may, either before or concurrently with their decision on the question of priority, but independently of such decision, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent to either of the parties for the claim or claims in interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed if such matters have not been considered before by the examiner, or take other appropriate action. If the case is not so remanded, the primary examiner will, after judgment on priority, consider such matters, unless the same shall have been previously disposed of by the Commissioner.

tion relate to, or are "ancillary" to, the question of who was the first to make the invention.

Rule 259 appears, in somewhat ambiguous terms, to render numerous matters ancillary to priority and therefore decidable by the board of interferences. It says "The Board of Patent Interferences may . . . direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their [sic] opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent to either of the parties. . . ." If the board is to arrive at an "opinion" on the matters listed in Rule 259, it would seem that it must fully consider those matters. That the Rule describes such matters as not "relating" to priority would appear to indicate that such matters are not "ancillary" to priority. At the same time, however, the Rule's indication that the board "may" direct such matters to the Commissioner establishes that it need not do so. Coupled with the Rule's reference to the board's reaching an "opinion" that a matter "establishes the fact that" certain conditions are true, the board's discretion to refer or not refer would appear to include discretion to decide that matter.[3]

The day may come when it will be appropriate to call a halt to the designation of additional matters as "ancillary to priority" and to the concomitant expansion of the role of the Board of Interferences.[4]

To designate this as that day would, in view of *Weil v. Fritz, supra,* be to create an anomaly wherein the question of whether best mode is ancillary to priority would depend on whether the involved application was the first in a series. I would, accordingly, overrule whatever remained of *Thompson v. Dunn,* 35 CCPA 957, 166 F.2d 443, 77 USPQ 49 (1948) after *Weil* was decided.

Having determined that best mode was not ancillary to priority the board had no reason to and did not determine whether Winchell had disclosed the best mode known to him at the time of the application. It declined to refer the issue to the Commissioner, stating no reasons for so declining. The board's actions leave the question of whether best mode was disclosed undeterminable on appeal.[5]

The court has determined that best mode is an issue to be decided by the board because it is ancillary to priority. It does not, in my view, follow that the board must itself make the decision in every case on whether an applicant has disclosed the best mode known to him on the filing date. Like other such matters, the issue is one at the threshold. Rule 259 is still alive. Perhaps a procedure may develop under which the board may suspend the interference and refer the question to the Commissioner. If the Commissioner decides that best mode was disclosed, the board may adopt the Commissioner's decision as its own. The issue would thereby be preserved for appeal here as part of the board's, not the Commissioner's, decision. Similarly, if the Commis-

---

**3.** No criticism of the Rule is intended or implied. The extent to which its make-up was influenced by this court's decisions is unknown.

**4.** And a halt to the concomitant expansion of this court's role in reviewing the board's decisions. The day may also come when either the court, or the Congress, may overrule all past decisions requiring the board to decide any question beyond that of who was the first inventor. Because the procedural matrix created by this court's past decisions involves numerous parties, the drastic reformation resulting from such action would benefit from input by

all affected parties. Hence it should not, in my view, be taken at this time by this court.

**5.** The concern that the question could never be raised in the PTO by an interference party may be ameliorated under new rules entitling any person to require reexamination of an issued patent. The interference loser would have to wait until his opponent's patent had issued. Justice would not, however, be impinged. The loser, not being the first inventor, would not be entitled to a patent. If reexamination disclosed fatal defects in the interference winner's application, his victory would be pyrrhic, his patent being properly rendered useless.

sioner decided that best mode was not disclosed, the resulting rejection on 35 U.S.C. § 112 would be appealable here. If that rejection were reversed, the interference would presumably be revived.

In all events, until the court elects to overrule its past "ancillary to priority" cases, the holdings therein must not only "govern further proceedings" in the involved cases, 35 USC 144, but, in deference to *stare decisis*, those holdings should govern in like cases. This being a "like case," the court is impelled, in my view, to hold best mode ancillary to priority.