**John E. MORGAN, Appellant,**

v.

**Harry HIRSCH, Appellee.**

**Appeal Nos. 83–909, 83–910.**

United States Court of Appeals,
Federal Circuit.

March 2, 1984.
</div>

**1450**

Robert B. Frailey, Philadelphia, Pa., argued for appellant.

Robert E. Burns, New York City, argued for appellee.

Before MARKEY, Chief Judge, and FRIEDMAN and RICH, Circuit Judges.

RICH, Circuit Judge.

This appeal is from two decisions dated December 8, 1982, of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) in two interferences, Nos. 99,909 and 99,910, awarding priority of the counts to the senior party, Harry Hirsch. We affirm.

The subject matter, generally speaking, is thermal underwear. The time period involved, during which the events leading to the filing of the parties' patent applications took place, is 1974–1977. Hirsch filed his application, serial No. 780,463, on March 23, 1977. Morgan filed his patent application, serial No. 793,863, on May 6, 1977, and a divisional application, serial No. 823,711, August 11, 1977. All three applications were based on the same knitting machine which was procured for Morgan by Hirsch, under circumstances to be described, and delivered in March 1976. It was a circular knitting machine on which was produced the thermal fabric from which underwear was made in Morgan's factory, The J.E.

Morgan Knitting Mills, Inc., of Tamaqua, Pennsylvania.

Prior to the development of the machine described in the applications in the interferences, Morgan's plant had consumed large quantities of a thermal fabric known as raschel, which was made on warp knitting machines which are larger and more complicated and expensive than circular knitting machines. Morgan did not make raschel but bought it from others and desired to make something like it on circular knitting machines. As early as 1973 he was searching for ways to do it, finally succeeding through the efforts of Hirsch. Both Morgan and Hirsch regarded themselves as inventors and filed the above applications.

Interference 99,909 involves the Hirsch application and the Morgan divisional application, the sole count being directed to a weft-knitted thermal *fabric* simulating raschel.

Interference 99,910 involves the Hirsch application and Morgan's parent application, the sole count being directed to a *method* of forming yarns into a weft-knitted thermal fabric simulating raschel.

Due to the close relationship of the subject matter, the interferences were consolidated in the PTO and argued together, both there and in this court. The board, however, wrote separate and lengthy opinions, which in all essentials duplicate each other. In the course of doing so, the board came to the conclusion that neither Hirsch nor Morgan invented the subject matter of the counts, concluding each opinion by saying it was making a recommendation to the Commissioner under 37 CFR 1.259[1] that the claims corresponding to the counts be re-

---

1. § 1.259 *Recommendation by Board of Patent Interferences.*

    The Board of Patent Interferences may, either before or concurrently with their decision on the question of priority, but independently of such decision, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent

to either of the parties for the claim or claims in interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed if such matters have not been considered before by the examiner, or take other appropriate action. If the case is not so remanded, the primary examiner will, after judgment on priority, consider such matters, unless the same shall have been previously disposed of by the Commissioner.

jected under 35 U.S.C. § 102(f).[2] It then proceeded to prepare and file, on the same day as the opinions in the interferences, a lengthy "Recommendation Under Rule 37 CFR § 1.259," stating in full detail all of its reasons for making it.

Morgan filed requests for rehearing and/or reconsideration and a motion to reopen testimony in both interferences and the board denied them in a 5-page opinion. These appeals followed.

## OPINION

■ Since the interferences involve pending applications, Morgan, as junior party, had the burden of proving his case for priority by a preponderance of the evidence. *Shindelar v. Holdeman,* 628 F.2d 1337, 207 USPQ 112 (Cust. & Pat.App.1980); *Davis v. Reddy,* 620 F.2d 885, 205 USPQ 1065 (Cust. & Pat.App.1980); *Horwath v. Lee,* 564 F.2d 948, 949 n. 2, 195 USPQ 701, 703 n. 2 (Cust. & Pat.App.1977); 37 CFR 1.257.

■ Both parties have based their application disclosures and the counts in issue on a circular knitting machine built by Alber & Bitzer, a German manufacturer, at the instigation of Hirsch, its American representative, and brought to this country for sale to Morgan through Hirsch's company, Albi Knitting Machine, Inc. (Albi), and on the knitted product produced by that machine, which machine was capable of producing only a single product.

The board accorded Hirsch a conception date of mid-April 1976 by which date his knitting machine technician, Nolle, had received and translated drawings and instructions from Alber & Bitzer and had set up the machine for Morgan, apparently treating Nolle as a corroborating witness and assigning the conception date as of the time when Nolle must have had an understanding of the invention. For a Hirsch reduction to practice date, the board selected mid-July 1976 by which time, in its view, the machine must have been used to produce a satisfactory product (i.e., it was adequately tested) because at that time Morgan ordered fifteen more machines from Albi. We agree with these conclusions of the board.

Mid-July 1976 is, therefore, the date to be overcome by Morgan by showing that he had earlier made the inventions of the counts.

We have carefully studied the briefs and reviewed the evidence relied on by Morgan to support his contention that he had invented the fabric and the method of making it prior to the date accorded Hirsch. We find it insufficient to show that he invented the subject matter of the counts prior to Hirsch's date, or at any other time. He has therefore not sustained his evidentiary burden.

The first activity relied on by Morgan was in the period from the summer or early fall of 1973 to January 14, 1974. In this period, approached by personnel from the Trabal Company, manufacturer of circular knitting machines in Spain, and being a heavy consumer of warp-knit raschel thermal fabric, Morgan showed them a sample of raschel fabric and asked whether they had any machines which could make that kind of fabric. The initial answer was that they did not, but they would see what the factory could come up with. In due course, Trabal supplied a first sample of fabric to Morgan which was not what he wanted. As a result of his "prodding and instructions," to quote Morgan's brief, Trabal, after submitting successive samples, eventually produced a fabric to Morgan's liking from which he had one of his employees make a shirt on January 2, 1974, Morgan Exhibit 1.

The board expressed two reasons for giving this evidence no weight and for holding that Morgan had not conceived the invention of the counts before Hirsch's date: (1) he had not analyzed the stitch pattern of

**2.** § 102. *Conditions for patentability; novelty and loss of right to patent*

A person shall be entitled to a patent unless—

. . . .

(f) he did not himself invent the subject matter sought to be patented . . . .

the Trabal fabric and (2) there is no evidence that he had in mind a specific stitch structure in accordance with the counts when the Exhibit 1 shirt was made. We agree with those reasons, but a more fundamental question is whether there is any evidence to support Morgan's contention that he was the inventor of the Trabal fabric. We have examined all of the evidence to which we have been referred by Morgan's briefs and find ourselves in agreement with Hirsch's brief which says that "Morgan did not make the invention. He only posed the problem." While he refers to "instructions" he gave to Trabal, he has not shown by evidence what they were or that he ever told Trabal to make any specific new fabric; he asked them if they could produce a fabric on circular knitting machines like the old and well-known raschel fabric, and they did. We quite understand his layman's point of view, quoted in his brief, that he was the inventor "because if it wasn't for me it [the Trabal fabric] wouldn't be here." But asking someone to produce something without saying just what it is to be or how to do it is not what the patent law recognizes as inventing. Neither does it suffice that Morgan's secretary of 32 years and his circular knitting machine technician stated their personal, and also lay, conclusions that Mr. Morgan was the "inventor" of the fabric produced by Trabal in Spain. All the record shows to us is that Trabal submitted successive samples which Morgan criticized, and for which he finally supplied the kind of yarn he wanted used, until he got what he wanted. In our view, so far as the record goes, Mr. Morgan has confused his entrepreneurship with inventorship.

The next phase of Morgan's activity was in connection with Hirsch. After the shirt, Exhibit 1, was produced from Trabal fabric, no further business was done with Trabal on this matter. Morgan turned to Albi Knitting Machine, Inc., Hirsch's company, and through it sought to secure circular knitting machines manufactured by its German manufacturer, Alber & Bitzer, which would produce the fabric Trabal had made for Morgan. The evidence on these negotiations, which started with the submission of a swatch of Trabal fabric to an Albi sales representative, Sayewich, with the advice from Morgan that it had been made on a circular knitting machine, and ended with the delivery of a machine to Morgan more than two years later, adds nothing to Morgan's claim of inventorship. The development of the machine took place in Germany through Hirsch's collaboration with his manufacturer in the course of his many trips to Germany and Morgan's role was essentially limited to saying whether samples of fabric, sent to him as development of a machine progressed, met with his approval or not.

Since we agree with the board that Morgan's evidence fails to establish that he invented the subject matter of the counts before Hirsch was in full possession of it, it follows that there is no merit to Morgan's claim that Hirsch derived the invention from him.

■ The other issues raised by Morgan, that the Hirsch application does not support the counts and that Hirsch committed fraud in the Patent and Trademark Office by reason of an undisclosed on-sale bar under § 102(b), we find lacking in merit and correctly decided by the board for the reasons it stated.

■ The board's recommendation to the Commissioner under 37 CFR 1.259, referred to at the end of each of its opinions is not, of course, before this court on this appeal. However, in view of the position the board is taking—which can hardly escape our notice—that neither Hirsch nor Morgan made the invention of the two counts in issue in the two interferences, the board's award of "priority" must be regarded as a *pro forma* award. The implication of the board's statement on this matter is that it would have liked to have made an award against *both* parties, not just against Morgan. As it correctly stated, the decision of our predecessor court in *Sheffner v. Gallo,* 515 F.2d 1169, 185 USPQ 726 (Cust. & Pat.App. 1975), precludes it from doing that under the circumstances here. (Third-party in-

ventorship is not ancillary to priority; an interference is limited to determination of priority and questions ancillary thereto.) Consequently, our affirmance of the award of priority must also be taken as strictly *pro forma* and not as any indication that we approve the issuance of a patent to anyone.

We have decided to issue this affirmance on "priority" as perhaps the most expeditious way of moving this litigation to a conclusion, but it appears to us that the procedure followed by the PTO may have been excessively wasteful of both its resources and ours, a heavy burden on the parties, and quite likely unnecessary, considering the express provisions of Rule 1.259. Under that rule, the board was authorized to have made its recommendation "before ... their decision on the question of priority ...." Had it done so, it would have avoided the writing of the two board opinions, each over 30 pages in length. It has already written its 3-page recommendation to the Commissioner, filed concurrently with its opinions and obviously based on its study of the record in the consolidated interferences. Had it made its recommendation *without* deciding "priority," not only would the board have spared itself the labor of writing its opinions, at least until the PTO had settled the substantial questions of inventorship which it had found to exist and the propriety of continuing these interferences. No appeals on "priority" would have been taken to this court by Morgan, and both parties would have been spared the expense of briefing and arguing these appeals. This court would have been spared much labor on the part of three judges and their staffs in preparing to hear and hearing argument, possibly to no useful purpose. *Cf. Tofe v. Winchell,* 645 F.2d 58, 63, 209 USPQ 379, 383 (Cust. & Pat.App. 1981). The present case, however, is not one which involves a non-priority issue *ancillary* to priority which either the board or this court should decide; rather, it involves the more fundamental question whether an interference should continue to a conclusion on priority in the face of a clear possibility that it is an exercise in futility. That possibility should be settled when it arises. See

also *Vandenberg v. Reynolds,* 242 F.2d 761, 765, 113 USPQ 275, 278 (Cust. & Pat.App. 1957).

The decisions of the board in the interferences are *affirmed.*

AFFIRMED.